CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 14 2016

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

STEVEN GOLIA,                              )
                                           )
            Plaintiff,                     )          Civil Action No. 3:15CV00008
                                           )
v.                                         )          **MEMORANDUM OPINION**
                                           )
DAVID W. THOMAS and                        )          By: Hon. Glen E. Conrad
DAVID M. BUONCRISTIANI,                    )          Chief United States District Judge
                                           )
            Defendants.                    )

In this diversity action, Steven Golia claims that David Thomas and David Buoncristiani committed legal malpractice in the course of representing him in the case of American Demolition and Nuclear Decommissioning, Inc. v. IBCS Group, Inc., No. 3:11CV00078 (W.D. Va. filed Dec. 9, 2011) ("the ADND case"). Thomas and Buoncristiani (collectively, "the attorneys") have moved to dismiss Golia's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions will be granted in part and denied in part.

### Background

The following facts, taken from Golia's second amended complaint, are accepted as true for purposes of the attorneys' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Golia, a New Jersey resident, worked for IBCS Group, Inc. ("IBCS"), a Florida corporation based in Charlottesville, Virginia, from February of 2008 until February of 2012. IBCS is owned and controlled by Edmund Scarborough, an individual surety who resides in Earlysville, Virginia.

Between September 2008 and September 2009, IBCS distributed a marketing brochure to American Demolition and Nuclear Decommissioning, Inc. ("ADND"). The brochure, which was

located on the IBCS website, indicated that IBCS "would 'reverse the transaction' if a bond issued by IBCS was rejected by a Contracting Officer." 2d Am. Compl. ¶ 16. The brochure also indicated that Scarborough's bonds were "'good enough to be approved by the federal government,'" and that they "'may be backed by cash, cash equivalents or readily marketable assets.'" Id. ¶ 17.

On March 19, 2009, ADND retained IBCS to supply a bond in support of a bid for the performance of demolition work at a federal government project in Aiken, South Carolina ("the Aiken Project"). ADND executed a General Agreement of Indemnity, which "contained the following language concerning the refund of bond premiums: '[t]he full initial fee is fully earned upon execution of the bond and will not be refunded, waived or cancelled for any reason.'" Id. ¶ 19.

On December 10, 2009, ADND paid the required bond premium in the amount of $138,005.00. Prior to paying the premium, William Schaab, an ADND representative, had a personal conversation with Scarborough. Consistent with the representations in the marketing brochure, Scarborough advised Schaab that the bond premium would be refunded in the event that the bond was rejected by the Contracting Officer.

IBCS presented the bond to ADND on December 16, 2009. The Contracting Officer at the Aiken Project ultimately rejected the bond. The Contracting Officer determined that the bond failed to meet certain security and collateral requirements set forth in the Federal Acquisition Regulations ("FAR").

ADND notified IBCS of the Contracting Officer's decision. IBCS was unable to supply a replacement bond that would satisfy the FAR requirements. Consequently, ADND was forced to purchase another bond from a different surety.

2

ADND subsequently requested a refund of the $138,005.00 bond premium paid to IBCS. However, IBCS, through Scarborough, refused to provide a refund.

On December 9, 2011, ADND filed suit in this court against IBCS, Scarborough, and Golia, asserting a claim of false advertising under Virginia law. The case was assigned to the undersigned district judge.

Immediately after IBCS was served with the complaint, IBCS representatives sought the legal services of Thomas and Buoncristiani. The attorneys agreed to represent IBCS, Scarborough, and Golia. They subsequently filed a joint answer on behalf of all three defendants. The answer did not assert any individual defenses on behalf of Golia.

On January 10, 2014, ADND moved for summary judgment against IBCS, Scarborough, and Golia. Golia claims that the attorneys did not advise him of the filing of the motion, or consult with him regarding any potential individual defenses or arguments that could have been raised in opposition to the motion.

On May 14, 2014, the court granted ADND's motion for summary judgment. The court entered judgment in favor of ADND, and against Golia, IBCS, and Scarborough, in the amount of $138,005.00, together with post-judgment interest at the statutory rate. Thereafter, the court granted ADND's motion for attorneys' fees, which was not opposed by the defendants.

### Procedural History

Golia filed the instant action against his former attorneys on February 10, 2015. In his second amended complaint, Golia claims that a conflict of interest resulted from the attorneys' joint representation of himself, IBCS, and Scarborough, and that the attorneys committed legal malpractice by failing to raise any individual defenses on his behalf. Golia specifically alleges that the attorneys should have moved to dismiss the claim against him for lack of personal

3

jurisdiction, that they should have asserted a statute of limitations defense, and that they should have raised individual defenses relating to the proximate cause of ADND's loss. Golia claims that he "would have successfully defended ADND's false advertisement claim if [the attorneys] had adequately presented [his] individual defenses," and that "[a]n adequate representation by [the attorneys] would have prevented Golia from suffering a personal judgment against him and the resulting damages to [his] professional reputation." 2d Am. Compl. ¶¶ 107-08.

The attorneys have moved to dismiss the second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed and is ripe for decision.

### Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the plaintiff's complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see also Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

4

## Discussion

In order to establish a claim of legal malpractice under Virginia law, a plaintiff must show that his attorneys "failed to exercise 'a reasonable degree of care, skill, and dispatch' in performing the services for which the attorney[s were] employed," and that "such failure was the proximate cause of the [the plaintiff's] loss." Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller, 453 S.E.2d 270, 272 (Va. 1995) (quoting Ortiz v. Barrett, 278 S.E.2d 833, 837 (Va. 1981)); see also Hendrix v. Daugherty, 457 S.E.2d 71, 74 (Va. 1995) ("A mere allegation of negligence or breach of a duty is not sufficient to support an action for legal malpractice. Rather, a plaintiff is required to plead that he sustained damages proximately caused by the attorney's acts and omissions."). As a general rule, both of these issues "are to be decided by a fact finder, after considering testimony of expert witnesses." Heyward & Lee Constr. Co., 453 S.E.2d at 272. "However, when these questions are purely matters of law, they are reserved for determination by a court and cannot be the subject of expert testimony." Id.

As summarized above, Golia specifically claims that the attorneys committed legal malpractice in the ADND case by failing to seek dismissal for lack of personal jurisdiction, by not asserting a statute of limitations defense, and by failing to raise individual defenses relating to the proximate cause of ADND's loss. For the following reasons, the court concludes that Golia's statute of limitations theory of malpractice fails as a matter of law. However, Golia's other theories of malpractice involve questions of fact that cannot be decided on a motion to dismiss.

## I. Statute of Limitations Defense

ADND's false advertising claim was filed pursuant to Virginia Code §§ 18.2-216 and 59.1-68.3. Section 18.2-216 makes it unlawful for "[a]ny person, firm, corporation or association" to publish, disseminate, or place before the public a written "advertisement of any

5

sort" that contains "any promise, assertion, representation, or statement of fact which is untrue, deceptive or misleading," if the advertisement is made with the "intent to sell" or "to induce the public" to enter into an obligation. Va. Code § 18.2-216. Pursuant to § 59.1-68.3, "[a]ny person who suffers loss as the result of" false advertising in violation of § 18.2-216 may "bring an individual action to recover damages." Va. Code § 18.2-216.

It is undisputed that a claim for false advertising is subject to the two-year limitation period prescribed by Virginia Code § 8.01-248. See Parker-Smith v. Sto Corp., 551 S.E.2d 615, 619 (Va. 2001) ("[A] cause of action for false advertising is an action for which no limitation period is prescribed. Therefore, Code § 8.01-248 is applicable[.]"). The viability of a statute of limitations defense in the underlying action hinges on when such claim accrues. In asserting that the attorneys committed legal malpractice by failing to raise a statute of limitations defense, Golia argues that ADND's false advertising claim accrued on March 19, 2009, when ADND executed the General Indemnity Agreement that expressly indicated that the bond premium could not be refunded upon execution of the bond. Alternatively, Golia argues that any claim against him began to accrue in September of 2009, when the marketing brochure was no longer accessible from the IBCS website. For the following reasons, the court finds Golia's arguments unpersuasive.

As noted above, Virginia Code § 18.2-216 allows "[a]ny person who suffers loss" as a result of false advertising to bring an action for damages. Based on the plain language of the statute, the court agrees with the attorneys that a claim for false advertising does not accrue until the loss or damage occurs. Although the Supreme Court of Virginia has not had the occasion to

6

address this particular issue,* it has long recognized that "[a] right of action cannot accrue until there is a cause of action," and that "[i]n the absence of injury or damage," a plaintiff "has no cause of action and no right of action can accrue to him." Caudill v. Wise Rambler, 168 S.E.2d 257, 259 (1969). Applying this rule in First Virginia Bank-Colonial v. Baker, 301 S.E.2d 8 (Va. 1983), in which a bank sought to recover damages caused by the defendants' alleged negligence, the Supreme Court held that "the bank's right of action accrued when the damage occurred." Baker, 301 S.E.2d at 14. The Court reasoned that "[t]o hold that the statute began to run in 1973 [when the alleged misfeasance occurred] would be to hold that the statute ran before the cause of action ripened into a right of action." Id.; see also Stone v. Ethan Allen, Inc., 350 S.E.2d 629, 632 (Va. 1986) ("Until the fire loss occurred, the Stones had not sustained a damage – an essential element of a cause action. Without damage, there is no cause of action, and hence, no right of action.").

Based on the plain language of Virginia Code § 18.2-216, and in accordance with the foregoing precedent, the court concludes that a right of action for false advertising does not accrue until the resulting loss or damage occurs. The court's conclusion in this regard is consistent with the state circuit court's decision in Brown v. Labelle, 84 Va. Cir. 258, 261 (Va. Cir. Ct. 2012). See id. (holding that a right of action for false advertising does not accrue "until Plaintiffs suffer a loss"). It is also consistent with Virginia's accrual statute. See Va. Code § 8.01-230 ("In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property . . . .").

_____

* In Parker-Smith, the appellant "d[id] not raise any issue regarding when her false advertising claims accrued for purposes of applying the limitations period in Code § 8.01-248." Parker-Smith, 551 S.E.2d at 619 n.6.

In the underlying action, the loss that ADND claimed to have suffered was the amount paid to purchase the bond from IBCS. ADND purchased the bond by paying the $138,005.00 bond premium on December 10, 2009. It subsequently filed the underlying action on December 9, 2011. Because ADND filed suit within the two-year period prescribed by Virginia Code § 8.01-248, Golia is unable to state a plausible claim of legal malpractice based on the attorneys' failure to raise a statute of limitations defense.

## II.    Personal Jurisdiction and Proximate Cause Defenses

Golia also claims that the attorneys committed legal malpractice in the ADND case by failing to seek dismissal of the claim against him for lack of personal jurisdiction, and by failing to raise defenses relating to the proximate cause of ADND's loss. In moving to dismiss these claims, the attorneys argue that Golia had no viable personal jurisdiction or proximate cause defense under the facts presented. To support their arguments, the attorneys repeatedly cite to matters outside the pleadings in the instant action, including evidence submitted in the ADND case and the court's memorandum opinion granting ADND's motion for summary judgment. See, e.g., Buoncristiani's Br. in Supp. of Mot. to Dismiss 3-4 ("The evidence was overwhelming that Golia had extensive contact with the principal of ADND and repeatedly referenced the Brochure and its content. This Court reached the same conclusion in deciding the Motion for Summary Judgment."); Id. at 11 ("[T]he pleadings and documents attached [to ADND's motion for summary judgment] show that Golia's conduct reached into Virginia."); Id. ("As this Court found in its Memorandum Opinion, Golia was intimately involved in inducing Schaab and ADND into using Scarborough and IBCS to provide the bond."); Id. at 15 ("Golia's role in inducing Schaab and ADND to purchase the defective bond has already been established.").

8

While courts can take judicial notice of court records for some purposes, the attorneys' contentions go too far. "By [their] logic, an unfavorable judicial decision allegedly wrought by their legal malpractice can be used as a shield against a legal malpractice claim." Al Jezeera Int'l v. Dow Lohnes PLLC, No. 13-2769, 2014 U.S. Dist. LEXIS 121773, at *12 (D. Md. Sept. 2, 2014). The attorneys do not cite to any authority that would allow the court to utilize the records from the underlying action in this manner, and the court is of the opinion that it would be inappropriate to do so at the Rule 12(b)(6) stage of the proceedings. Accordingly, the attorneys' motions to dismiss will be denied with respect to Golia's personal jurisdiction and proximate cause theories of legal malpractice.

## Conclusion

For the reasons stated, the attorneys' motions to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 14ᵗʰ day of June, 2016.

_____
Chief United States District Judge

9